## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Carsten J. Quinlan, et al., | Case No. 24-cv-02782 (KMM/SGE) |
| Plaintiffs, | |
| v. | **ORDER** |
| Washington County, City of Woodbury, Kim Richardson, and Hailey Dornfeld, | |
| Defendants. | |

---

Pending before the Court are Motions to Dismiss filed by Defendants City of Woodbury and Kim Richardson ("City Defendants" or "Defendants") [ECF No. 72], and Defendants Washington County and Hailey Dornfeld ("County Defendants" or "Defendants") [ECF No. 80]. Additionally, Plaintiff Carsten Quinlan has filed a Motion for Leave to File a Second Amended Complaint [ECF No. 92], and Mr. Quinlan and the City Defendants have sought sanctions [ECF Nos. 121, 131].

For the reasons set forth below, the Court **GRANTS** the Motions to Dismiss, **DENIES** the Motion to Amend, and **DENIES** the Motions for Sanctions.

## BACKGROUND

Plaintiff Carsten Quinlan and Alissa Puls are the parents of A.G.Q., E.D.Q., and L.E.Q. Amend. Compl., ECF No. 34 ¶ 1, 19. At the time the Amended Complaint was filed, A.G.Q. was eight years old, E.D.Q. was six years old, and L.E.Q. was four years old. Amend. Compl. ¶ 1. On December 9, 2022, Mr. Quinlan and Ms. Puls' divorce was finalized, and both parents were granted joint custody of the minor children. *Id.* ¶ 23.

On January 20, 2023, Amanda Mann, a social worker at A.G.Q.'s school, reported to Mr. Quinlan and Ms. Puls that A.G.Q.'s teacher noticed A.G.Q. engaging in inappropriate touching of her private area. Mann Email, Sealed Ex. C, ECF No. 38 at 1. A child protection report was made, and an investigation initiated. Mann Email, Sealed Ex. C at 3–10. Kim Richardson, a detective with the Woodbury Police Department who is employed by the City of Woodbury, and Hailey Dornfeld, a Washington County Child Protective Services ("CPS") investigator, were assigned to the investigation. Incident R., Sealed Ex. E, ECF No. 40 at 3. Mr. Quinlan was informed by Ms. Dornfeld that he was not allowed to see his children while under investigation and that the investigation could last up to 45 days. Amend. Compl. ¶ 26.

A forensic interview of A.G.Q. occurred on January 26, 2023. Interview Tr., Sealed Ex. D, ECF No. 39. During her interview, A.G.Q. reported the following, in part:

| AGQ | Dad is not [inaudible]. He likes to rest. Now, when he visits, he pulls down his pants and starts playing with his penis. |
| | . . . |
| AGQ | He starts pretending that there's a juice in it and then it squirts and he [inaudible]. |
| HD | Okay. So he pulls his pants down. |
| AGQ | And he shows his penis. |
| HD | Okay. How much does he do that? |
| AGQ | Every time I see him. |
| | . . . |
| AGQ | He took off his clothes, and then he started playing with his private parts. He did this. He did that. And then his penis is as far as it can go. |
| | . . . |
| HD | I want to ask you about when you said you spent time with your dad and you said he pulls his pants down. Did I get that right? |

AGQ    Yeah. I might want to show you. I'll draw another picture of it.
       So I might want some color, some different.

       . . .

AGQ    He's stretching his penis, but I don't want, I can't, so he's like
       stretching his penis, so I'm making it look like he's stretching
       his penis by pointing an
       arrow that way.

       . . .

KR     How does he do that? Does he use his hands or somebody
       else's hands or something else?

AGQ    His hands.

       . . .

KR     Where does he do this? In the bedroom, in the bathroom,
       something else?

AGQ    In the bathroom.

KR     Okay. Are you and your brother in the bathroom with your dad
       when this happens or something else?

AGQ    We want to be somewhere else, but he makes us go with him.

       . . .

HD     Tell me about what he says to you when he stretches out his
       penis.

AGQ    He says stretch.

       . . .

AGQ    Stretching, stretching. Hang out my penis. Stretching,
       stretching, stretching out my penis.

HD     Okay. Does he ever make anybody else stretch it out?

AGQ    Yes.

       . . .

AGQ    I even have to stretch his penis out.

       . . .

HD     Okay. And you use your hands on what part of his body? On
       his private area?

AGQ    Yes.

HD     Okay. And is that every time you see Dad?

AGQ    Yes.

       . . .

AGQ    He also wiggles his bottom. And he goes like this.

HD     Okay. Is he wearing clothes or-

AGQ    No, he's not wearing clothes when he does that.

       . . .

| | |
|---|---|
| AGQ | If we stretch him, he stretches us right back. |
| | . . . |
| KR | Well, because, do you know what a penis does? |
| AGQ | Yeah. |
| KR | What does a penis do? |
| AGQ | It makes you tinkle. |
| | . . . |
| AGQ | I was actually naked... I'm naked when I stretch him in case he does that. But that's never happened. |
| | . . . |
| HD | Okay. And when he touches your bottom, are you wearing clothes, are you naked, or something else? |
| AGQ | I'm wearing clothes. |
| | . . . |
| KR | Did he say why you have to stretch? No? He just does it? How does it feel when he's stretching it? |
| AGQ | Kind of it's a hurtful feeling. |
| | . . . |
| AGQ | A touch I don't like. |

A.G.Q. Interview, Ex. D, ECF No. 39 at 78–89, 407–36, 458–72, 473–93, 600–30, 651–56, 500–17, 531–47, 589–95.

Following the forensic interview of A.G.Q., a Woodbury Public Safety Police Report was filed, WB23003368 [Ex. E, ECF No. 40], and Detective Richardson and Ms. Dornfeld began their investigation of Mr. Quinlan. Amend. Compl. ¶ 26. Shortly thereafter, Mr. Quinlan voluntarily agreed to be interviewed by Detective Richardson and Ms. Dornfeld. Incident R. at 8. At the conclusion of the interview, Detective Richardson placed Mr. Quinlan under arrest. Amend. Compl. ¶ 81; Quinlan Interview Tr., Sealed Ex. J, ECF No. 45 at 20. He was charged with criminal sexual conduct. *Id.*

In April of 2024, a jury trial commenced in *State of Minnesota v. Carsten J. Quinlan*, 82-CR-23-361. *Id.* ¶ 87; Ex. M, ECF No. 48. Mr. Quinlan was found not guilty on April 8, 2024. Amend. Compl. ¶ 91; Ex. M, ECF No. 48 at 1199 ¶ 6–22.

On May 21, 2024, the Washington County District Court ordered Mr. Quinlan to have no contact with his minor children and to cease efforts to reunite with his children. Flynn Decl., Ex. 5, ECF No. 74 at 2. On October 15, 2024, Mr. Quinlan voluntarily transferred permanent legal and physical custody of all three of his minor children to Ms. Puls. *Id.* at 5; Ex. 6 at 4–5. This lawsuit followed.

In a state court complaint, Mr. Quinlan asserted claims, on behalf of himself and his children, against Washington County, the City of Woodbury, Kim Richardson, Hailey Dornfeld, Keshini Ratnayake, Tom Wedes, Mathew Stephenson, Chris Murphy, and Unknown John/Jane Doe(s) in Washington County District Court. Notice of Removal, ECF No. 1-1 at 2. The City Defendants removed the case to this Court, pursuant to 28 U.S.C. § 1331. Notice of Removal at 1.

On October 24, 2025, Mr. Quinlan filed an Amended Complaint asserting claims against Washington County, the City of Woodbury, Kim Richardson, and Hailey Dornfeld. ECF No. 34. The Amended Complaint includes the following claims under state and federal law in thirteen separate counts:

1. Fraud and fraudulent nondisclosure against all Defendants (Count I);
2. Malicious prosecution against all Defendants (Count II);
3. Intentional infliction of emotional distress of A.G.Q. against all Defendants (Count III);
4. Abuse of process against all Defendants (Count IV);

5

5.  Defamation against all Defendants (Count V);

6.  Endangerment of a child against all Defendants (Count VI);

7.  Failure to protect against all Defendants (Count VII);

8.  Negligence and gross negligence against all Defendants (Count VIII);

9.  Wrongful arrest pursuant to 42 U.S.C. § 1983 against all Defendants (Count IX);

10. Violations of due process and family rights pursuant to 42 U.S.C. § 1983 against all Defendants (Count X);

11. Violations of equal protection pursuant to 42 U.S.C. § 1983 against all Defendants (Count XI);

12. Vicarious liability against all Defendants (Count XII); and

13. Ratification against the City of Woodbury and Washington County (Count XIII).

Mr. Quinlan seeks compensatory and punitive damages for emotional distress, financial losses, reputational damage, and long-term medical and psychological harm suffered by his children. Amend. Compl. ¶ 14. Additionally, he requests injunctive relief to restore his reputation by reversing any findings that he abused his children, as well as to compel accountability in the handling of child abuse investigations in the City of Woodbury and Washington County. *Id.* ¶ 15.

In the Motions to Dismiss, the Defendants argue that the Amended Complaint fails to state a claim for fraud and fraudulent nondisclosure (Count I), malicious prosecution (Count II), intentional infliction of emotional distress (Count III), abuse of process (Count IV), endangerment of a child (Count VI), failure to protect (Count VII), negligence and gross negligence (Count VIII), and vicarious liability. Additionally, the Defendants assert

that *Rooker-Feldman*[1] bars the Plaintiffs claims of endangerment of a child (Count VI), failure to protect (Count VII), negligence and gross negligence (Count VIII), and due process and family rights under 42 U.S.C. § 1983 (Count X). Defendants argue that, as it relates to the defamation claim (Count V), they are entitled to absolute immunity for statements made in a police report under *Carradine*.[2] Furthermore, Defendants claim that the Complaint fails to allege a custom, policy, or practice that caused the alleged constitutional violation as required for § 1983 claims as it relates to the claims for wrongful arrest (Count IX), due process and family rights violation (Count X), and equal protection (Count XI) claims. Defendants assert that they are entitled to judicial immunity as it relates to the due process and family rights violation (Count X) and vicarious liability (Count XII) claim. Lastly, as it relates to the equal protection violation (Count XI), vicarious liability (Count XII), and ratification (Count XIII) claims, Defendants argue that the Amended Complaint fails to plead a cognizable *Monell*[3] claim.

## DISCUSSION

### I.    Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[1] Under the "*Rooker-Feldman*" doctrine, federal district courts lack subject matter jurisdiction over challenges to state court decisions in judicial proceedings. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *see also District of Columbia v. Feldman*, 460 U.S. 462 (1983).

[2] *Carradine v. State*, 511 N.W.2d 733 (Minn. 1994).

[3] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Courts construe a *pro se* plaintiff's complaint liberally, but such pleadings must still allege sufficient facts to support the plaintiff's claims. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).[4]

---

[4] The Court finds that the exhibits provided by the City Defendants referenced in this Order are properly before the Court as they are embraced by the Amended Complaint. *See Zean v. Fairview Health Services*, 858 F.3d 520, 526 (8th Cir. 2017) ("[C]ourts additionally consider 'matters incorporated by reference or integral to the claim . . . whose authenticity is unquestioned[]' without converting the motion into one for summary judgment.").

## II.    Claims on Behalf of Minor Children

As a threshold point, Mr. Quinlan purports to bring this lawsuit not just on his own behalf, but also on behalf of his three minor children. Nothing in the action suggests that Mr. Quinlan is a lawyer.

Since Mr. Quinlan is not a lawyer, he is only able to represent himself. *Winters v. Winters*, No. 19-cv-3177 (SRN/KMM), 2020 WL 1049145, at *3 (D. Minn. Feb. 11, 2020) (citing *Knoefler v. United Bank of Bismark*, 20 F.3d 347, 347–48 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity . . . in a court of the United States."), *report and recommendation adopted,* No. 19-cv-3177 (SRN/KMM), 2020 WL 1043742 (D. Minn. Mar. 4, 2020). Even parents without legal representation who wish to bring claims on their children's behalf are subject to this principle. *Winters*, 2020 WL 1049145 at *3 (citing *Udoh v. Minn. Dep't of Human Servs.*, No. 16-cv-3119 (PJS/SER), 2017 WL 9249426, at *4 (D. Minn. July 26, 2017); *see also Burnett v. GlaxoSmithKline LLC*, No. 16-cv-01137 (JNE/KMM), 2016 WL 4728117, at *1 n.1 (D. Minn. Aug. 10, 2016) (citing *Vargason v. Dep't of Human Servs.*, No. 13-cv-0518 (DWF/LIB), 2013 WL 1315090, at *1 n.1 (D. Minn. Mar. 7, 2013). Consistent with these cases, the Court dismisses all claims Mr. Quinlan purports to assert on behalf of his minor children without prejudice.

## III.    Section 1983 Claims

Several of Mr. Quinlan's claims are based on 42 U.S.C. § 1983. A § 1983 claim requires a plaintiff to establish the deprivation of a right secured by the Constitution or laws of the United States that was caused by a person acting under the color of state law. *Tipler v. Douglas Cnty.*, 482 F.3d 1023, 1027 (8th Cir. 2007).

A defendant may raise the defense of qualified immunity in response to a claim made under § 1983:

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. . . . [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Kruger v. Nebraska*, 820 F.3d 295, 302 (8th Cir. 2016) (alteration in original) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)). "This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Manzano v. S. Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 509 (8th Cir. 1995) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

## A. Due Process

In Count X of the Amended Complaint, Mr. Quinlan asserts that his due process and familial rights were violated when he was "rapidly separate[ed] . . . from his children without justification or warrant" and that within a week, he was completely cut off from access to his children. ECF No. 34 at 23–24. Additionally, Mr. Quinlan claims that the investigation that led to the charges against him was inadequate in several respects. He alleges that, when Defendants presented their investigation to the prosecutor,[5] they did not

---

[5] While it is unclear which defendants are specifically alleged to have violated Mr. Quinlan's rights, it does not change the analysis.

reveal that Washington County officials had done the following: concealed medical records and audio files that would have benefitted Mr. Quinlan; disregarded exculpatory witness statements and failed to disclose them; and proceeded with multiple prosecutions despite overwhelming evidence of innocence. Response Brief, ECF No. 97 at 3–4. Additionally, Mr. Quinlan asserts that officials ignored clear forensic inconsistencies and medical evidence contradicting the allegations; actively suppressed reports against his ex-wife, Alissa Puls, while aggressively pursuing baseless allegations against him; and obstructed outside investigations that could have revealed the truth. *Id.* at 4. Mr. Quinlan argues that these actions were intended to deprive him of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. *Id.* at 6, 21, 26–27. The Court will analyze this claim as raising both substantive and procedural due process violations.

### *Substantive Due Process*

The Eighth Circuit "recognized a substantive due process cause of action for reckless investigation in *Wilson v. Lawrence County, Mo.*, 260 F.3d 946 (8th Cir. 2001), where [the court] identified the liberty interest at stake as the 'interest in obtaining fair criminal proceedings.'" *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (quoting *Wilson*, 260 F.3d at 956 n. 8). "To establish a violation of this right by a botched investigation, [a plaintiff] must show that [defendants] intentionally or recklessly failed to investigate, thereby shocking the conscience." *Amrine*, 522 F.3d at 834 (citing *Wilson*, 260 F.3d at 956); *see also Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017) ("[Such a claim] must involve conduct 'so severe . . . so disproportionate to the need presented, and . . . so

inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'"). However, "[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold. . . ." *Carlson v. Cnty. of Ramsey*, No. 16-cv-765 (SRN/BRT), 2016 WL 3352196, at *8 (D. Minn. June 15, 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998)), *aff'd sub nom. Carlson v. Cnty. of Ramsey*, 673 F. App'x 601 (8th Cir. 2017) (per curiam).

Even assuming Mr. Quinlan could establish that the Defendants intentionally or recklessly failed to investigate the allegations against him, the Court finds that Mr. Quinlan's substantive due process claim fails nonetheless because neither Ms. Richardson nor Ms. Dornfeld engaged in conduct so egregious that it shocked the conscience. Rather, the allegations in the Amended Complaint and other materials properly before the Court demonstrate that Richardson and Dornfeld became involved after they received a child protection report, first raised by a teacher, regarding A.G.Q.'s conduct at school. When Richardson and Dornfeld interviewed A.G.Q., they received information implicating Mr. Quinlan in conduct that would violate criminal sexual conduct statutes. Following those revelations, he was investigated and forbidden from seeing his children. There are no facts adequately pled that the Defendants' investigative decisions were influenced or motivated by improper reasons, nor that their conduct was egregious.

Mr. Quinlan's assertions that investigators ignored exculpatory information and concealed evidence are not sufficient, standing alone, to support a substantive due process claim under Eighth Circuit precedent. Courts have consistently held that a plaintiff must allege more than conclusory claims of investigative failure; instead, the plaintiff must show

that investigators intentionally or recklessly failed to investigate in a manner that "shock[s] the conscience." *See Amrine*, 522 F.3d at 834; *Wilson*, 260 F.3d at 956. The threshold is not mere negligence or oversight—even gross negligence is insufficient to establish liability under the Fourteenth Amendment. *See Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *Carlson*, 673 F. App'x at 602 (affirming dismissal where plaintiff alleged an investigation was flawed but failed to plead conscience-shocking conduct).

Here, Mr. Quinlan claims that investigators failed to disclose favorable records, disregarded exculpatory witness statements, and overlooked inconsistencies in the evidence. However, those assertions are largely conclusory and unsupported by plausible facts showing malice, sadism, or intentional misconduct—particularly when viewed in the context of the credible, detailed, and troubling allegations made by A.G.Q., a child witness. The Eighth Circuit has recognized that law enforcement may reasonably rely on detailed accusations made by minors and are not required to discount their accounts merely due to age. *See Myers v. Morris*, 810 F.2d 1437, 1456–57 (8th Cir. 1987), *overruled in part by Burns v. Reed*, 500 U.S. 478 (1991) (rejecting the inference that child victims are inherently less credible). Given that Richardson and Dornfeld acted upon a substantiated report from a minor and promptly pursued further inquiry, the conduct alleged—at worst—suggests imperfect investigation, not the sort of egregious abuse of official power necessary to state a constitutional violation. *See Buckley*, 848 F.3d at 863 (investigative misconduct must be "so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of

13

official power"). There are no facts adequately pled that the Defendants' investigative decisions were influenced or motivated by improper reasons.

### Procedural Due Process

Mr. Quinlan also contends that his due process rights were violated when his children were removed from his care. Mr. Quinlan argues that his "family rights" were violated, but he was not provided meaningful post-deprivation procedures to challenge the events that transpired after his children were removed from his care. Again, the Court finds his allegations inadequate to state a due process claim.

"The Due Process Clause requires that the person whose rights are being interfered with receives notice and has an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Alvarez v. Obrien*, No. 21-cv-303, 2022 WL 170065, at *3 (D. Neb. Jan. 19, 2022) (quoting *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005)). However, "[i]n child removal cases, the meaningful time and manner requirement means that the state must hold a hearing promptly after removal." *Alvarez*, 2022 WL 170065, at *3 (quoting *Swipies*, 419 F.3d at 715); *see also Stanley v. Finnegan*, 447 F. Supp. 3d 771, 784 (W.D. Ark. 2020) ("When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a prior due process hearing, the state has the burden to initiate prompt judicial proceedings to provide a post deprivation hearing.") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1311 (8th Cir. 1997)), *aff'd sub nom. Stanley v. Hutchinson*, 12 F.4th 834 (8th Cir. 2021).

Here, Mr. Quinlan was afforded adequate post-deprivation remedies through the criminal, CHIPS, and OFP proceedings. City Def. Ex. 7 (showing that Quinlan declined to

14

show up for the OFP hearing where Ms. Puls was granted sole custody on February 13, 2023); *see also* City Def. Ex. Nos. 5 and 6 (revealing the voluntary transfer of custody to Ms. Puls where Quinlan was represented by counsel, following an additional CHIPS proceeding after his acquittal). As such, the Court finds that Mr. Quinlan's due process claim (Count X), whether pled as substantive or procedural, is **DISMISSED**.

### B. Equal Protection

In Count XI, Mr. Quinlan asserts a § 1983 claim for violation of his rights under the Equal Protection Clause. Specifically, Mr. Quinlan alleges that Defendants treated him differently than Ms. Puls by failing to fully credit the exonerating information and evidence he provided. Amend. Compl. ¶ 109.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018) (quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994)). By claiming that he was treated differently from Ms. Puls in violation of his equal protection rights, Mr. Quinlan invokes the "class-of-one" theory. As the Eighth Circuit has explained:

> The Supreme Court recognizes such a "class of one" equal protection claim—meaning "the plaintiff did not allege membership in a class or group"—"where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). However, plaintiffs may not attack an officer's investigative decisions in a class-of-one equal protection claim. *Flowers v. City of*

*Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) ("[W]hile a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *see also Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008) (explaining that "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" and those are not conducive to an equal protection claim under the class-of-one theory)

Since Mr. Quinlan's claim in Count XI is based on the decision to investigate, under *Flowers*, Mr. Quinlan fails to state a § 1983 equal protection claim. Therefore, Count XI is **DISMISSED** for failure to state a claim.

### C. Wrongful Arrest

Mr. Quinlan claims in Count IX that he was arrested without probable cause in violation of his Fourth Amendment rights. Amend. Compl. ¶¶ 180–82. The Eighth Circuit has held that the existence of probable cause to support an arrest forecloses a wrongful arrest claim. *Smith v. Rozeboom*, 108 F.4th 1064, 1070 (8th Cir. 2024) (citing *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010)). "The existence of probable cause is based on the facts available to the officers at the moment an arrest is made, and is determined from the standpoint of an objectively reasonable police officer[.]" *Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021) (cleaned up). "[A]n officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is

based in probable cause if the mistake is 'objectively reasonable.'" *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523).

Taking the pleaded facts in the Amended Complaint as true and drawing reasonable inferences in Mr. Quinlan's favor, the Court finds that he has failed to state a claim for unlawful arrest. The materials properly before the Court demonstrate that Detective Richardson had substantially more than the minimal arguable probable cause to make an arrest. A.G.Q.'s forensic interview contained statements of the minor describing inappropriate sexual behavior involving physical contact and conversations about genitalia with Mr. Quinlan. A.G.Q. recounted incidents of statements from Mr. Quinlan suggesting concerning interactions of a sexual nature with a minor. The statements gave Detective Richardson probable cause to make an arrest.

Again, Mr. Quinlan asserts that Detective Richardson failed to consider the overwhelming evidence he provided to her. During the interview of Mr. Quinlan, he provided a large binder that contained "hundreds of pages of documentation and reports," along with a laptop that contained "several audio and video recordings." ECF No. 34 ¶ 67; ECF No. 36 at 6. However, the Eighth Circuit has rejected "the inference that law enforcement personnel are necessarily less entitled to rely on details of criminal activity described by children than those described by adults." *Myers v. Morris*, 810 F.2d at 1456–57. And of course, the fact that he was later acquitted does not demonstrate that probable cause was lacking at the outset. *Hartman v. Moore*, 547 U.S. 250, 251 (2006) ("[T]he existence of probable cause will suggest that the prosecution would have occurred even without a retaliatory motive.").

Here, Detective Richardson relied on A.G.Q.'s forensic interview, the report from the teacher, and other evidence in deciding there was probable cause to arrest Mr. Quinlan. Moreover, given the facts alleged, any mistake in the belief that probable cause existed for that arrest was objectively reasonable, so Detective Richardson would be entitled to qualified immunity. Because Mr. Quinlan has alleged no facts from which it can be inferred that Detective Richardson violated his constitutional rights in arresting him for sexual abuse of a minor, he has failed to state a claim for wrongful arrest in violation of the Fourth Amendment. Mr. Quinlan's wrongful arrest claim (Count IX) is **DISMISSED** for failure to state a claim.

### D. Malicious Prosecution

In Count 2, Mr. Quinlan asserts a malicious prosecution claim against Detective Richardson and Ms. Dornfeld on the grounds the Defendants lacked probable cause to instigate a criminal prosecution and acted with malice.[6] Amend. Compl. ¶ 132.

"To succeed on such a claim, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024); *Thompson v. Clark*, 596 U.S. 36 (2022) (holding that malicious prosecution is actionable under the Fourth Amendment). "A plaintiff must show that (1) the criminal proceeding was instituted without probable

---

[6] The Amended Complaint does not explicitly state that the malicious prosecution claim Mr. Quinlan asserts is a constitutional claim brought pursuant to § 1983. However, because Mr. Quinlan is a pro se litigant and the Court must construe his pleadings liberally, the Court will analyze his malicious prosecution claim as arising under § 1983 and implicating his federal constitutional rights.

cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).

Mr. Quinlan provides nothing beyond conclusory statements regarding Detective Richardson and Ms. Dornfeld's conduct. While Mr. Quinlan states that Detective Richardson knowingly pursued criminal charges based on "fabricated evidence," Opp. Brief, ECF No. 72 at 26, he does not point to any allegations in the pleadings showing that any Defendant created false evidence. Moreover, "[t]he law does not require law enforcement officers to conduct a perfect investigation. . . ." *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013); *Stepnes v. Ritschel*, 663 F.3d 952, 961 (8th Cir. 2011) ("[O]fficers are not required to conduct a 'mini-trial' before arrest."); *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (same). Based on A.G.Q.'s statements made during the forensic interview in relation to Mr. Quinlan's conduct, it was reasonable for Detective Richardson to believe that Mr. Quinlan had committed the crime for which he was ultimately charged: such a precaution cannot be plausibly alleged to be malicious.

For these reasons, Mr. Quinlan's malicious prosecution claim (Count II) is **DISMISSED** for failure to state a claim.

## IV.    State-Law Claims

In Counts 1, 3–8, 12, and 13, Mr. Quinlan asserts various state-law claims against the Defendants, including fraud and fraudulent nondisclosure, intentional infliction of emotional distress, abuse of process, defamation, endangerment of a child, failure to protect, negligence and gross negligence, vicarious liability, and ratification. Pursuant to

28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over these remaining state law claims, having dismissed the § 1983 claims as to which the Court had original jurisdiction in this action. *See Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014); *Gibson v. Weber*, 431 F.3d 339, 342 (8th Cir. 2005). Counts 1, 3–8, 12, and 13 are therefore **DISMISSED WITHOUT PREJUDICE**.

## V.    Motion to Amend

In Mr. Quinlan's Motion for Leave to Amend, he requests permission from the Court to supplement his pleading to assert "newly developed factual allegations and add additional defendants whose wrongful acts have become evident since the filing of the original complaint." ECF No. 93 at 1. Mr. Quinlan seeks to add Washington County officials and Alissa Puls to the litigation for their alleged willful suppression of exculpatory evidence in connection with the above-referenced legal matters against Mr. Quinlan.

Mr. Quinlan alleges that his original complaint was limited to events that occurred prior to the resolution of the criminal trial, but since its filing, a juvenile court prosecution began that necessitates the addition of new defendants. ECF No. 93 at 5.

Washington County argues that Mr. Quinlan's attempt to assert additional defendants and claims should be denied. The additional parties are either county prosecutors or social workers who acted in Mr. Quinlan's criminal trial and began the termination of parental rights action, and therefore, Defendants argue they are entitled to prosecutorial immunity. Memo. in Opp., ECF No. 101 at 1. Defendants City of Woodbury and Detective Kim Richardson assert that Mr. Quinlan failed to assert a single event that transpired after he filed his October 24, 2024 Amended Complaint, and that the events

relate to potential new Defendants that were known to Mr. Quinlan at the time of filing. ECF No. 98 at 1. Additionally, Defendants argue that Mr. Quinlan's individual capacity and civil conspiracy claims are futile, and that such an attempt to amend the pleading violates the Court's September 25, 2024 Order. *Id.*

"[T]he Court has discretion to allow a party, 'on just terms,' to serve a supplemental pleading that '[set]s out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented.'" *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, No. 18-cv-231 (DSD/KMM), 2019 WL 1923111, at *1 (D. Minn. Apr. 30, 2019) (quoting Fed. R. Civ. P. 15(d) (emphasis added, second alteration in original)); *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) ("An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause.") (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101 (W.D. Mo. 1939)).

The outcome is the same whether the Court applies Rule 15(d) or Rule 15(a)(2). The Court will deny leave to amend or supplement the pleadings. Allowing such an amendment or supplementation is inappropriate here because Mr. Quinlan's proposed amended complaint would not survive a motion to dismiss for failure to state a claim, making his proposed amended complaint futile. *See U.S. ex rel Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) ("Futility is a valid basis for denying leave to amend."); *Streambend Props. III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349, 357 (D. Minn. 2014) (explaining that futility may prevent amendment "when the claim would not withstand a

motion to dismiss for failure to state a claim upon which relief can be granted") (cleaned up).

Mr. Quinlan's attempt to assert claims under 42 U.S.C. § 1983 against Ms. Puls fail for an additional reason: she is a private individual, and Mr. Quinlan has not plausibly alleged facts demonstrating that she acted "under color of state law." Section 1983 applies only to actions taken by individuals who are either state actors or private parties whose conduct is "fairly attributable to the State." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (quoting *Montano v. Hedgepeth,* 120 F.3d 844, 848–49 (8th Cir. 1997)). Mr. Quinlan does not plead any facts supporting a theory under which Ms. Puls' actions could be considered state action, and mere allegations of cooperation or influence are not enough. *See Sabri v. Whittier Alliance*, 833 F.3d 995, 1000 (8th Cir. 2016) ("A state's mere approval of or acquiescence in the initiatives of a private party does not amount to state action.") (cleaned up); *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 536 (8th Cir. 2014) (explaining that a plaintiff "must plausibly allege a mutual understanding, or a meeting of the minds, between the private party and the state actor" and finding mere allegations of contacts between private actors and state actors were insufficient to infer a conspiracy) (cleaned up). Therefore, any § 1983 claim against Ms. Puls is not viable.

As set forth above, Mr. Quinlan's Motion for Leave to File Second Amended Complaint, **ECF No. 92**, is **DENIED**.

## VI.    Motions for Sanctions

The City Defendants and Mr. Quinlan filed cross-Motions for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. ECF Nos. 121, 131.

The City Defendants claim that Mr. Quinlan violated Rule 11 by asserting claims that are not warranted by existing law or supported by evidence in filing a Motion to Leave to Supplement [ECF No. 92-1, 93], and his opposition to City Defendants' Motion to Dismiss [ECF No. 96]. They seek an Order prohibiting Mr. Quinlan from filing without counsel or prior Court screening and approval; reimbursement for all reasonable attorneys' fees and costs associated with the Motion for Sanctions, opposing the Proposed Supplemental Pleading, and replying to Mr. Quinlan's Opposition to City Defendants' Motion to Dismiss; and additional relief as the Court deems just and appropriate for sanctions. ECF No. 131 at 4.

Mr. Quinlan filed a cross-Motion, arguing, in essence, that the City Defendants' Rule 11 Motion was filed for "an improper purpose," that their request is disproportionate to Mr. Quinlan's alleged conduct, that the Motion misstated the record and misapplies Federal Rules, and finally, that Mr. Quinlan's conduct is not sanctionable.

"Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Menze v. Astera Health*, No. 0:23-cv-03901 (KMM/LIB), 2024 WL 4602730, at *9 (D. Minn. Sept. 30, 2024) (quoting *Sharma v. Crosscode, Inc.*, No. 21-cv-01766 (SRN/BRT), 2022 WL 816555, at *17 (D. Minn. Mar. 17, 2022)), *aff'd*, 24-3096, 2025 WL 957205 (8th Cir. Mar. 31, 2025). Mr. Quinlan is a pro se plaintiff, but the standards of Rule 11 still apply to pro se litigants. *Id.* (citing *Kunzer v. Doyscher*, No. 05-CV-2640 (JMR/AJB), 2006 WL 8444928, at *1 (D. Minn. July 10, 2006)). "Courts, however,

'traditionally afford pro se parties some leeway under Rule 11.'" *Id.* (quoting *Mousel v. Knutson Mortg. Corp.*, 823 F. Supp. 658, 663–64 (D. Minn. 1993)).

Here, granting a suitable amount of discretion because Mr. Quinlan is pro se, the Court determines that Mr. Quinlan's Motion to Leave to Supplement and his opposition to the City Defendants' Motion to Dismiss do not warrant sanctions. While it is true that Mr. Quinlan was expressly informed of the requirements before filing his Motion to Leave to Supplement and responding to the Motion to Dismiss, the Court does not believe that Mr. Quinlan was required to agree with the City Defendants' legal arguments in favor of dismissal, even those arguments concerning the viability of his claims were ultimately successful. *See, e.g.*, ECF No. 107 at 3 ("Plaintiff was expressly advised . . . that Plaintiff's purported representation of his children was not permitted under the law. However, Plaintiff has failed to voluntarily dismiss or otherwise acknowledge that he lacks standing and capacity to represent his minor children in the present action.").

Mr. Quinlan's proposed amended complaint seeks to add a conspiracy claim against Ms. Puls. The Court agrees with the City Defendants that dismissal of the conspiracy claim is warranted, considering the lack of support for a conspiracy in Mr. Quinlan's own pleadings. But Mr. Quinlan did not bring conspiracy claims in his original complaint, and the Court finds that a pro se plaintiff's single attempt to state a claim, even one that is entirely unsupported, would rarely rise to the level of objective unreasonableness. Here, the better remedy for such an unsupportable claim is a dismissal from the Court, which the City Defendants' have sought and obtained. The Court concludes that Mr. Quinlan's pleadings do not represent sanctionable conduct.

Mr. Quinlan's motion is also denied. He has failed to demonstrate that the Woodbury Defendants submitted any filing for an improper purpose or otherwise violated Rule 11.

## ORDER

Based on the discussion above, **IT IS HEREBY ORDERED** that:

1. Defendants City of Woodbury and Kim Richardson's Motion to Dismiss [ECF No. 72] is **GRANTED**;

2. Defendants Washington County and Hailey Dornfeld's Motion to Dismiss [ECF No. 80] is **GRANTED**;

3. Plaintiff Carsten Quinlan's Motion for Leave to File a Second Amended Complaint [ECF No. 92] is **DENIED**;

4. Motions for Sanctions filed by Plaintiff Carsten Quinlan [ECF No. 121] is **DENIED**; and

5. Motions for Sanctions filed by the City of Woodbury and Kim Richardson [ECF No. 131] is **DENIED**.

**Let Judgment be entered accordingly.**

Date: July 21, 2025                          *s/Katherine Menendez*
                                             Katherine Menendez
                                             United States District Court